**William Glyndwr JONES, III, Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 2–94–363–CR.**

Court of Appeals of Texas,
Fort Worth.

July 3, 1996.

Discretionary Review Refused Oct. 30, 1996.

Carl Mallory, Arlington, for appellant.

Tim Curry, Criminal Dist. Atty., Betty Marshall, Charles M. Mallin, Asst. Chiefs of Appellant Section, Edward L. Wilkinson, Bill Durkin, Assistants, Fort Worth, for appellee.

Before LIVINGSTON, DAUPHINOT and BRIGHAM, JJ.

## OPINION ON REHEARING

DAUPHINOT, Justice.

This court grants the State's motion for rehearing in this case, and denies the State's motion for rehearing en banc. The court is of the opinion that the relief requested by the State in its motion for rehearing should be denied. However, the opinions and judg-

ment of May 9, 1996 are withdrawn and, in an effort to clarify, the following opinion is substituted.

Appellant William Jones was stopped one night in September when officers observed his truck pull out of a public park. One of the officers smelled marijuana on Jones and arrested him for being under the influence of marijuana. After Jones was arrested, an officer searched Jones and found a plastic pill bottle that contained a white powdery substance which was later shown to be methamphetamine. The jury convicted Jones of possession of methamphetamine. The trial judge sentenced Jones to five years' confinement, probated for five years.[1] Jones appeals his conviction raising six points of error. Jones complains that he was denied a trial before an impartial tribunal, that evidence was obtained as a result of an illegal stop without probable cause or reasonable suspicion, and, lastly, that he was denied his constitutional right to counsel. Because we sustain points three, four, five, and six, we reverse.

In his third and fourth points of error, Jones complains that the trial court erred in overruling his motion to suppress the drugs found in Jones's possession. Officer Bayuk testified that he stopped Jones for the sole reason that Jones was driving out of a dark area at 10:25 at night. He testified that Jones had driven his pickup from behind a clump of trees, and Officer Bayuk was curious as to why he would be parked in that location at that time of night. Officer Bayuk testified:

Q. And he had not violated any other law to your knowledge at the time you stopped him?

A. Not until I stopped him.

Q. Okay. You had—in other words your sole reason for stopping him was he was coming out of a dark area and it was 10:25 at night?

A. Suspicious nature of why he was back there. Why the vehicle was back there, that was my curiosity.

---

1. This case was tried by a former judge sitting by appointment rather than by the elected trial judge.

Q. Right. You had curiosity because it was 10:25 and coming out of a park area?

A. You know, like I stated, you know, when he came out from behind the trees, it drew my attention why would a vehicle be coming out there that late at night and all that.

The trial court overruled the motion to suppress. The same evidence was then offered before the jury, and Officer Bayuk testified on voir dire:

Q. Had you seen any illegal activity at the time you stopped this vehicle?

A. In that area?

Q. From Mr. Jones's vehicle?

A. Not until I stopped it.

Q. Okay. He was not speeding?

A. No, he was not.

Q. That area was not posted no admittance, was it?

A. No, sir.

Q. In other words, what you saw was simply a vehicle driving out toward the highway and no illegal activity at all?

A. Not just seeing a vehicle coming out.

. . . .

Q. Had you seen this vehicle do anything that would lead you to believe as a police officer that he had committed an illegal act?

A. No, sir.

■ When hearing a motion to suppress evidence, the judge is the sole and exclusive trier of facts.[2] The trier of fact is the sole judge of the credibility of witnesses and weight to be given their testimony.[3] It is not the job of the appellate court to engage in

our own factual review, but we must determine whether the trial court's finding is supported by the record.[4] If findings of fact or conclusions of law are not filed, we presume that the trial court made the findings necessary to support its ruling so long as those implied findings are supported by the record.[5]

■ The reviewing court must review the entire record to determine whether there are *any* facts which lend support for any theory upon which the trial court's ruling can be sustained. And if the implied or actual findings are supported by the record, the appellate court addresses only the question of whether the trial court improperly applied the law to the facts.[6] Finally, if the trial judge's decision is correct on any theory of law applicable to the case, it must be sustained.[7]

The court of appeals must limit its review of the trial court's rulings, both as to the facts and the legal significance of those facts, to a determination of whether the trial court abused its discretion.[8] Even if the court of appeals would have reached a different result, so long as the trial judge's ruling is within the "zone of reasonable disagreement," the appellate court should not intercede.[9]

■ The level of suspicion for an investigatory stop is considerably less than proof of wrongdoing by a preponderance of the evidence, and is less demanding than that for probable cause.[10] An investigatory detention is not permissible, however, unless the circumstances upon which the officers rely objectively support a reasonable suspicion that the person detained actually is or has been or

2. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990).

3. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991); *Gibbs v. State*, 819 S.W.2d 821, 830 (Tex.Crim.App.1991), *cert. denied*, 502 U.S. 1107, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992).

4. *Romero*, 800 S.W.2d at 543.

5. *Vela v. State*, 871 S.W.2d 815, 816–17 (Tex. App.—Houston [14th Dist.] 1994, no pet.).

6. *Romero*, 800 S.W.2d at 543.

7. *Id.*

8. *Id.*

9. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim.App.1991) (op. on reh'g).

10. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989); *Howe v. State*, 874 S.W.2d 895, 900 (Tex.App.— Austin 1994, no pet.).

soon will be engaged in criminal activity.[11] There must be a reasonable suspicion by the officer that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with an unusual activity, and some indication that the activity is related to a crime.[12]

■ The circumstances sufficient to raise suspicion that illegal conduct is taking place need not be criminal in themselves.[13] Rather, they may include any facts that in some measure render the likelihood of criminal conduct greater than it would be otherwise.[14] In evaluating the validity of the stop, we must consider the totality of the circumstances.[15]

■ Detention based on a hunch is illegal.[16] Further, if events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful.[17] The relevant inquiry, however, is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular noncriminal acts.

The record before us reflects that Jones was driving out of a public park. Public parks often have trees and bushes. Some parks have curfews. There are times after which it is illegal to enter or to remain in the park. The record before us, however, reflects that Jones had violated no such curfew. Presence in the park, therefore, was not in and of itself illegal. The park from which the truck exited was not lit and did not contain park benches, tables, rest rooms, or improvements. Officer Bayuk testified that in the past, the area had been used by people smoking marijuana, minors drinking alcohol, and people having sex. He also mentioned that stolen vehicles had been abandoned there. Additionally, he testified that across the creek were expensive homes, some of which were under construction and some of which had been burglarized.

Officer Bayuk believed that any vehicle coming from that location at that time of night had no reason to be there because, he testified, "It's just totally black down there." For that reason only, he activated his lights and stopped the truck.

■ Merely leaving a dark area in the nighttime does not create a reasonable suspicion sufficient to justify detaining Jones and depriving him of his liberty even for the limited extent necessary to detect the odor of marijuana. The evidence obtained as a result of this detention and search was obtained in violation of the Fourth Amendment to the Constitution of the United States and article 1, section 9 of the Texas Constitution.

Reviewing the record in the light most favorable to the trial court's ruling, and without performing a *de novo* review of the record, and with great deference, not only to the historical facts, but also to the legal conclusions to be drawn from those historical facts, we find that the record does not support the trial court's denial of Jones's motion to suppress. We can find no reasonable view of the record that could support the trial court's conclusion under the correct law and the facts reviewed in the light most favorable to its legal conclusion.[18] Because the trial court's denial of Jones's motion to suppress, therefore, constituted an abuse of discretion, Jones's third and fourth points of error are sustained.

Although it is not necessary to reach Jones's fifth and sixth points of error, we shall address them briefly because they in-

11. *Crockett v. State,* 803 S.W.2d 308, 311 (Tex. Crim.App.1991); *Delgado v. State,* 718 S.W.2d 718, 722 (Tex.Crim.App.1986).

12. *Hoag v. State,* 728 S.W.2d 375, 380 (Tex.Crim. App.1987); *Metoyer v. State,* 860 S.W.2d 673, 677 (Tex.App.—Fort Worth 1993, pet. ref'd).

13. *Crockett,* 803 S.W.2d at 311.

14. *Id.*

15. *Sokolow,* 490 U.S. at 8, 109 S.Ct. at 1585, 104 L.Ed.2d at 10; *Howe,* 874 S.W.2d at 900.

16. *State v. Brabson,* 899 S.W.2d 741, 747 (Tex. App.—Dallas 1995, pet. granted).

17. *Id.*

18. *DuBose v. State,* 915 S.W.2d 493 (Tex.Crim. App.1996); *State v. Carter,* 915 S.W.2d 501 (Tex. Crim.App.1996).

volve the fundamental right of any person to be represented by the counsel of his choice.[19]

In his fifth and sixth points of error, Jones contends that the trial court erred in refusing to permit a second attorney to represent Jones as co-counsel during the trial. When the trial began on July 11, 1994, Jones was represented by one of his two attorneys. Carl Mallory was present and conducted the suppression hearing and the voir dire of the jury. Mallory and former judge Louis Sturns are law partners, a fact known by and acknowledged by the State. Sturns had even been in the courtroom on July 11, 1994, talking with Mallory. The trial judge was under the impression that Sturns would probably be present for the trial. On July 12, 1994, at 9:05 a.m., before any witness testified to the jury, Jones requested that Sturns be allowed to act as co-counsel. The State objected on the theory that one of the jurors had advised the State during voir dire that he knew of Sturns by reputation. Specifically, the juror stated, "Basically just through communication in the African–American community having served on several, you know, boards and things like that. Our paths have crossed."

When the State asked whether that would influence his service as a juror, he answered: "No. I mean, we've only met a couple of times and it was in business other than legal business. It was just more or less, hi, how are you doing. I'm aware of his brother and his nephew and—you know, just general talk of that nature. Nothing to do with the law."

When Jones asked that Sturns be allowed to participate in the trial, the State objected, stating that they would have struck that juror, Bob Fowler, if they had known Sturns would be acting as co-counsel. The record reflects that it was the practice of Mallory and Sturns that one of the lawyers would pick the jury and the other one would appear immediately thereafter for the trial. That fact was made known to the trial judge, who acknowledged that he was aware of their customary practice:

THE COURT: Well, I'll say this. That somewhere along the line, I had the impression that [Sturns] might be in here for the voir dire. . . .

. . . .

[STURNS]: . . . But we have tried cases together. In other cases—for example, I tried one case in Criminal District Court Number One where I came in on Friday and picked the jury and [Mallory] joined me that Monday and we tried the case. *So, this was done in the same manner which we've done in other cases.*

THE COURT: *I know that. I know that.* And I know that there was no intent to do anything other than just do it the way you're doing it and I have no problem with that. . . . [Emphasis added.]

But, nevertheless, the trial judge sustained the State's objection and refused to allow Sturns to represent Jones as co-counsel at trial.

The right of a defendant to choose his own counsel is guaranteed by article 1, section 10 of the Texas Constitution.[20] While a defendant in a criminal case may not switch counsel at the last minute or do anything to manipulate or delay the trial through his choice of counsel, he otherwise has an absolute right to choose his own attorney.[21]

Although the record does not reflect that allowing Sturns to act as co-counsel would have interrupted or even slowed the efficient administration of justice in this case, the trial judge ordered Sturns not to participate in any way in the trial. He was not to sit at the counsel table, to pass a note to Mallory, or to do anything else to assist in Jones's defense. In *Stearnes v. Clinton,*[22] the Court of Criminal Appeals made clear that the right to counsel of one's own choosing is constitutionally mandated. In *Stearnes,* the trial court had appointed coun-

---

19. U.S. Const. amend. VI; Tex. Const. art. I, § 10.

20. *Phetvongkham v. State,* 841 S.W.2d 928, 931 (Tex.App.—Corpus Christi 1992, pet. ref'd, untimely filed).

21. *Holloway v. State,* 780 S.W.2d 787 (Tex.Crim. App.1989).

22. 780 S.W.2d 216 (Tex.Crim.App.1989) (orig.proceeding).

sel to represent the defendant. Unhappy with the attorney's actions, the trial court sought to remove the attorney over the objection of both the defendant and his attorney. The Court of Criminal Appeals held that the trial court was without authority to remove the attorney or to deprive the defendant of an attorney who has either been appointed to represent him or who he has hired, provided that attorney is otherwise qualified. The action of the trial court violated the clear mandate of article 1, section 10 of the Texas Constitution and the Sixth Amendment to the Constitution of the United States. Jones's fifth and sixth points of error are sustained.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

LIVINGSTON, J., filed a concurring opinion.

LIVINGSTON, Justice, concurring.

I concur in the disposition of the third and fourth points of error regarding the denial of appellant's motion to suppress. I do not, however, believe it is necessary to reach the fifth and sixth points of error because the case is being remanded for a new trial. Although only dicta, I also do not agree with the conclusions reached by the majority on points of error five and six.

In points of error five and six, appellant claims his right to counsel under the Sixth Amendment to the Constitution of the United States and under article I, section 10 of Texas Constitution was denied. The pleadings show that Carl E. Mallory represented appellant. Mr. Mallory conducted the voir dire on behalf of his client and was introduced to the jury as appellant's attorney. Only on the next day as the trial was about to begin did Mr. Mallory ask to bring in his "partner," Judge Louis Sturns, as co-counsel. The prosecutor objected stating that had he been aware Judge Sturns would be trying the case, he would have exercised a peremptory challenge against a venireman who admitted knowing Sturns. While the right to employ counsel of one's own choosing exists, it is not an unlimited, unqualified right. *Childress v. State,* 794 S.W.2d 119, 121 (Tex.

App.—Houston [1st Dist.] 1990, pet. ref'd). The appellant's right to employ counsel must be balanced against the "important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice." *Kozacki v. Knize,* 883 S.W.2d 760, 762 (Tex.App.—Waco 1994, orig. proceeding).

For these reasons, I respectfully concur in the result and the opinion on points of error three and four only.